UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
MAXIMO P.,

                    Plaintiff,        <u>DECISION AND ORDER</u>
                                           1:24-cv-05897-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In July of 2021, Plaintiff Maximo P.[1] applied for Disability Insurance Benefits and Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the applications. Plaintiff, represented by McChesney and McChesney, P.C., Mark Nicholas Dunning, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 10).

This case was referred to the undersigned on May 14, 2025. Presently pending are the parties' competing requests for judgment on the

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

pleadings. For the following reasons, Plaintiff's request is due to be granted and this matter is remanded for further proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on July 27, 2021, alleging disability beginning January 1, 2018. (T at 185-194, 195-201).[2]  Plaintiff's applications were denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on December 4, 2023, before ALJ R. Dirk Selland. (T at 23-45). Plaintiff appeared with an attorney and testified. (T at 27-43). The ALJ also received testimony from James Conway, a vocational expert. (T at 43-44).

### B.    ALJ's Decision

On January 24, 2024, the ALJ issued a decision denying the applications for benefits. (T at 7-22).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2018 (the alleged onset date) and meets the insured status requirements of the Social Security Act through December 31, 2023 (the date last insured). (T at 12).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 11.

The ALJ concluded that Plaintiff's degenerative disc disease of the lumbar spine with radiculopathy and morbid obesity were severe impairments as defined under the Act. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 13).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: he cannot perform more than occasional climbing, crawling, crouching, kneeling, and stooping; and cannot tolerate more than concentrated exposure to irritants such as fumes, odors, dust, gases, or poorly ventilated areas. (T at 14).

The ALJ concluded that Plaintiff could perform his past relevant work as a sales manager. (T at 16).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between January 1, 2018 (the alleged onset date) and January 24, 2024 (the date of the ALJ's decision). (T at 16-17).

On June 14, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

### C.    Procedural History

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on August 2, 2024. (Docket No. 1).  On November 6, 2024, Plaintiff filed a brief in support of his request for review and remand. (Docket No. 12).  The Commissioner interposed a brief in opposition to Plaintiff's request on January 11, 2025. (Docket No. 16).  On January 27, 2025, Plaintiff submitted a reply memorandum of law in further support of his request. (Docket No. 17).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months ....”  42 U.S.C. §

423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises two main arguments in support of his request for reversal of the ALJ's decision.  First, he challenges the ALJ's failure to address the impact of his generalized anxiety disorder.  Second, Plaintiff argues that the ALJ did not consider properly his subjective complaints.

*A.    Generalized Anxiety Disorder*

Plaintiff was consistently diagnosed with generalized anxiety disorder. (T at 471, 473, 474, 475, 477, 480, 487, 488, 492, 496, 500, 504, 509, 512, 513, 517, 522, 527, 534, 534, 538, 541).  In January of 2022, Dr. Brian McIntyre, a non-examining State Agency review physician, opined that Plaintiff's anxiety was a severe impairment, but concluded that there was

"insufficient evidence to substantiate the presence of the disorder." (T at 55, 59).  In February of 2023, Dr. Ellen Suarez-Pinzas, another State Agency review physician, reached the same conclusion on reconsideration. (T at 65-66, 70-71).

During the administrative hearing, the ALJ identified Plaintiff's severe impairments as follows: "degenerative disc disease of the lumbar spine with radiculopathy, and morbid obesity." (T at 26).  The ALJ also listed other impairments, including generalized anxiety disorder, which he said he would "consider," but apparently did not consider severe. (T at 26).  The ALJ asked Plaintiff's counsel whether she agreed with his severity analysis, and she answered in the affirmative. (T at 26).

Notwithstanding the foregoing, the ALJ's decision contains no analysis of Plaintiff's anxiety or discussion of the impact of the condition on Plaintiff's ability to meet the demands of basic work activity.

The word "anxiety" appears once in the decision. When summarizing the medical opinions of record, the ALJ noted that the State Agency review physicians identified anxiety as a severe impairment but found insufficient evidence to substantiate the disorder. (T at 16).  The ALJ did not identify anxiety as a medically determinable impairment, did not make a finding as

to whether it was severe, and did not discuss the impact, if any, of the condition on Plaintiff's RFC.

The Commissioner contends that there is sufficient reason to conclude that the ALJ considered Plaintiff's anxiety and argues that there is substantial evidence in the record to support the conclusion that this condition was non-severe.

Plaintiff responds that the Commissioner's arguments are post-hoc justifications, which should not be allowed to cure the ALJ's failure to provide any analysis of the impact of his anxiety on his ability to meet the demands of basic work activity.

The Court agrees that post-hoc rationalizations by Commissioner's counsel are generally not sufficient to remedy gaps or errors in the ALJ's analysis. *See Newbury v. Astrue*, 321 F. Appx. 16, 18 (2d Cir. 2009).

A court, however, may overlook the absence of an adequate explanation or error if it is possible to "glean the rationale of the ALJ's decision." *Cichocki v. Astrue*, 534 Fed. Appx. 71, 76 (2d Cir. 2013). This should be done sparingly and only where it is clear the ALJ considered all the relevant evidence and the "the record contains robust support for the finding that [the claimant} is not disabled." *Barrere v. Saul*, 857 F. Appx. 22, 24 (2d Cir. 2021).

The Court finds there is robust support for the conclusion that
Plaintiff's anxiety is not severe and does not cause any work-related
limitations.  The absence of analysis in the ALJ's decision is accordingly
harmless and does not provide a reason for remand. *See Zabala v. Astrue*,
595 F.3d 402, 409 (2d Cir. 2010)(finding remand not appropriate if the ALJ
committed harmless error, *i.e.*, where "application of the correct legal
principles to the record could lead only to the same conclusion")(alteration
omitted)(citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).
Here's why.

First, that Plaintiff was diagnosed with generalized anxiety disorder,
without more, does not establish that the impairment is severe and/or prove
that it causes work-related limitations. *See Coleman v. Shalala*, 895
F.Supp. 50, 53 (S.D.N.Y.1995)(noting that the "mere presence of a disease
or impairment, or establishing that a person has been diagnosed or treated
for a disease or impairment" is not, by itself, sufficient to render a condition
"severe").

Indeed, a "finding of 'not severe' should be made if the medical
evidence establishes only a 'slight abnormality' which would have 'no more
than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*,

No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)).

Second, when asked to identify his disabling medical conditions in his benefits applications and during the administrative hearing, Plaintiff did not list anxiety or any other mental impairment (T at 41, 235). And, as noted above, Plaintiff's counsel at the administrative hearing agreed with the ALJ when he categorized anxiety as a non-severe impairment. (T at 26).  In February of 2022, Plaintiff was provided with the opportunity to submit additional information through a "Supplemental Anxiety Questionnaire," but declined to complete the form. (T at 261-63). *See e.g., Roane v. O'Malley*, No. 22 CIV. 10704 (AEK), 2024 WL 1357845, at *6 (S.D.N.Y. Mar. 29, 2024) ("Plaintiff next contends that ALJ Romeo erred by failing to find that she had a severe hip impairment. The Court disagrees. Notably, Plaintiff did not allege a hip impairment at the time she applied for benefits.").

Third, the record is devoid of any evidence that Plaintiff's anxiety limits his ability to meet the demands of basic work activity.  Plaintiff did not seek mental health treatment during the relevant period.  Mental status examinations from primary care providers were unremarkable, with Plaintiff described as cooperative, appropriate, and not experiencing symptoms of anxiety. (T at 343, 344, 353, 354, 370, 431, 767).  Several tests designed

to measure anxiety symptoms were administered; Plaintiff scored a "zero" (indicating minimal anxiety) on each. (T at 481, 514, 606, 638, 642, 659-60).

The Court, therefore, finds no reversible error regarding the ALJ's consideration of Plaintiff's generalized anxiety disorder. *See Guerra v. Comm'r of Soc. Sec.*, No. 16-CV-991, 2018 WL 3751292, at *2 (W.D.N.Y. Aug. 7, 2018), *aff'd sub nom. Guerra v. Saul*, 778 F. App'x 75 (2d Cir. 2019)("A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe.").

### B.    Subjective Complaints

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other

evidence in the record." *Id*. (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec*., 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's credibility. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.

This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's subjective complaints, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified as follows: He lives with a friend, who helps him with his activities of daily living. (T at 31-32). He performs some light chores, but his friend attends to most of the household duties,

including laundry and shopping. (T at 32-33).  Plaintiff spends "99%" of his time at home reading. (T at 34).  He can walk for about 30 minutes before needing to sit down. (T at 36).  Standing is preferred to sitting, as prolonged sitting is painful. (T at 36-37).  He cannot sit or stand for more than an hour or so. (T at 36, 41).  He is not sure how much he can lift but estimates 20-25 pounds would be his limit. (T at 37-38).  Weight loss efforts helped him lose 21 pounds. (T at 39).  His inability to work arises from back pain and difficulty breathing. (T at 40-41).  He cannot climb, kneel, or bend his back. (T at 43).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T at 15).

For the following reasons, the Court finds that the ALJ's consideration of Plaintiff's subjective complaints, and assessment of Plaintiff's physical RFC, must be revisited on remand.

First, the ALJ determined that Plaintiff retained the RFC to perform a range of light work, but did not provide function-by-function findings with respect to Plaintiff's ability to meet key demands of such work, including prolonged standing and walking. *See Poupore v. Astrue*, 566 F.3d 303, 305

(2d Cir.2009) ("The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8–hour workday, with sitting occurring intermittently during the remaining time.").

It is well-settled that before determining a claimant's RFC based on exertional levels (sedentary, light, medium, heavy, or very heavy), the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a *function-by-function basis*." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (emphasis added) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1545, 416.945.

The work-related functions include physical abilities (standing, sitting, walking, lifting, carrying, pushing, pulling), mental abilities (understanding, remembering, carrying out instructions, and responding to supervision), and other abilities that may be impacted by impairments (seeing, hearing, ability to tolerate environmental factors). *See* SSR 96-8P; *see also* 20 C.F.R. § 404.1545(b)-(d); id. § 416.945; *Cichocki*, 729 F.3d at 176.

The Second Circuit has not adopted a *per se* rule requiring remand in every case where an ALJ failed to provide an "explicit" function-by-function analysis. *See Cichocki*, 729 F.3d at 176; *compare Burrows v. Barnhart*, No. 3:03CV342, 2007 WL 708627, at *13 (D. Conn. Feb. 20, 2007)("[a]lthough

a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce [ ] a detailed statement in writing"), *with McMullen v. Astrue*, No. 5:05-cv-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008) (remanding because "the ALJ erred in determining that Plaintiff could do light work before fully assessing his work-related abilities on a function-by-function basis"). Nonetheless, "remand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichock*i, 729 F.3d at 177.

Here, the ALJ failed to explicitly assess Plaintiff's capacity to perform key functions of light work, including his ability to engage in prolonged walking and standing, which frustrates meaningful review. *See Gomez v. Saul*, No. 1:19-CV-04708 (ALC), 2021 WL 1172674, at *13 (S.D.N.Y. Mar. 29, 2021).

Second, the ALJ discounted Plaintiff's testimony as inconsistent with the objective evidence (T at 16), even though treatment notes documented significant findings, including slow, cautious, abnormal gait; severe spasms; and restricted range of motion. (T at 475, 478, 481, 488, 492, 494, 497, 500, 504, 510, 513, 517).  In addition, Plaintiff's treatment included pain

management with strong opioid medication. (T at 474, 477, 480, 482, 485, 487, 492, 494, 496. 499, 501, 504, 507, 511, 516).

The ALJ considered it significant that there were "minimal changes" to Plaintiff's treatment and "no exacerbations to his back condition during the relevant time period." (T at 15).

However, the fact that Plaintiff's condition was stable with a sedentary, limited lifestyle does not mean it was not disabling and/or that Plaintiff retained the RFC to meet the physical demands of a range of light work. *See Velasquez v. Kijakazi*, No. 19CV9303 (DF), 2021 WL 4392986, at *28 (S.D.N.Y. Sept. 24, 2021)(noting that "a person can have a condition that is both 'stable' and disabling at the same time") (citations omitted); *see also Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008)(finding that ALJ erred by, *inter alia*, "consistently interpret[ing] reports that [claimant's] condition has been 'stable' to mean that [her] condition has been good, when the term could mean only that her condition has not changed, and she could be stable at a low functional level").

Third, the ALJ discounted Plaintiff's subjective complaints because he did not obtain a lumbar MRI per his physician's repeated recommendation, without giving Plaintiff the opportunity to explain why he failed to get the scan. (T at 15, 520, 606).  This was error. *See Amanda W. v. Comm'r of*

*Soc. Sec.*, No. 22-CV-0286MWP, 2024 WL 3886209, at *4 (W.D.N.Y. Aug. 21, 2024) ("Although an ALJ may properly consider a claimant's noncompliance with recommended treatment when evaluating the consistency of her subjective symptoms with the overall record, the ALJ may not discount a claimant's subjective symptoms based upon noncompliance with treatment recommendations without first considering potential explanations for the noncompliance."); *Greene v. Berryhill*, No. 3:17-CV-01241 (JCH), 2018 WL 8646666, at *8 (D. Conn. Aug. 10, 2018)("Before drawing an inference, the ALJ must consider 'possible reasons [the claimant] may not comply with treatment or seek treatment consistent with the degree of his or her complaints.").

In addition, the ALJ discounted Plaintiff's subjective complaints because he was "inconsistent" with the "exercise program and … weight loss his physician has recommended." (T at 16).  This ignores evidence in the record, including Plaintiff's testimony during the hearing, that he was somewhat successful in losing weight and did attempt to comply with a home exercise program. (T at 38-39, 474, 683, 691, 699).

Moreover, the ALJ's analysis disregards alternative explanations, including Plaintiff's testimony that he gained weight from steroid treatment (T at 39) and the fact that a sedentary lifecycle is not self-evidently caused

by lack of motivation or self-control and may, in fact, be evidence of the very pain and limitation the ALJ discounted.

Fourth, the ALJ failed to adequately develop the record. The ALJ recognized that Plaintiff's severe impairments limited his ability to work, finding him restricted to a reduced range of light work. (T at 14). Thus, the question is not whether Plaintiff's functioning is limited, but to what extent.

The State Agency review physicians found insufficient evidence in the record to assess the impact of Plaintiff's impairments on his functioning. (T at 54-55, 65). The ALJ found these opinions unpersuasive and rendered his own lay review of the evidence. (T at 16). Considering the evidence of impairment as set forth above and given that the ALJ did not find any medical opinion persuasive, the ALJ erred by failing to seek a functional assessment from a treating provider and/or a consultative examination. *See Piscope v. Colvin*, 201 F. Supp. 3d 456, 464 (S.D.N.Y. 2016)("Given the conflicts in the medical evidence, and in light of the ALJ's decision to grant none of the medical opinions full weight, the record calls for enhancement through inquiries to the treating physicians or consultants that might shed light on the import of their opinions and the conflicts the ALJ identified.").

Lastly, Plaintiff had an extensive work history (T at 228-29, 236), which the ALJ should have considered as a factor tending to support his subjective complaints. *See Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."); *see also Cahill v. Colvin*, No. 12 CIV. 9445 PAE MHD, 2014 WL 7392895, at *26 (S.D.N.Y. Dec. 29, 2014).

C. *Remand*

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the reasons discussed above, the Court finds that a remand is required for further administrative proceedings and a proper assessment of

Plaintiff's subjective complaint and ability to meet the physical demands of basic work activity.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's request for judgment on the pleadings is GRANTED; the Commissioner's request for judgment on the pleadings is DENIED; and this case is REMANDED for further administrative proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment and then close the file.

Dated: June 6, 2025                    *s / Gary R. Jones*

                                        GARY R. JONES
                                        United States Magistrate Judge